[Department One. — April 20, 1883.]

JOHN HINKEL, RESPONDENT, v. HIS CREDITORS, V. D. MOODY, A CREDITOR, APPELLANT.

INSOLVENCY — ASSIGNEE — CREDITOR — FRAUD — OPPOSITION. — Under the insolvent law of 1852, it was competent for the regularly elected assignee, being a schedule creditor, to file a written opposition to the insolvent's discharge on the ground of fraud in wilfully and knowingly omitting property from the schedule and executing sham deeds with intent to defraud creditors. Such an opposition having been stricken out by the court, *held*, error.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco.

The facts are stated in the opinion of the court.

*Wilson & Otis*, for Appellant.

The striking out of the opposition to insolvent's discharge was error. (See §§ 8 and 10 of the Act of March 4, 1852; Stats. 1852, p. 69.)

The suggestion has been advanced by respondent that Moody had accepted the office of assignee, he is thereby precluded from impeaching the validity of his appointment, which respondent says he is attempting to do by filing this opposition. Judge Sanderson, however, in the case of *Wilson* v. *His Creditors*, 32 Cal. 406, 411, in construing section 20 of the act referred to, says: —

"So the creditors may oppose the discharge upon two grounds: first, any supposed illegality in the appointment of the assignee

which would raise an issue of law as to the validity and regularity of all the previous proceedings; and second, any supposed fraud on the part of the insolvent, within the meaning of sections twenty-seven to thirty-two, both inclusive, which would raise an issue of fact to be tried by a jury, on a plea of not guilty by the insolvent." The opposition in the case at bar, it will be seen, rests solely on the ground of alleged frauds of the insolvent, and does not in any way pretend to be an attack upon the regularity of the assignee's appointment. That an opposition of this character has been always recognized as proper, and coming within the contemplation of section 20 of the act, we submit is not only conclusively shown by the case last cited, but by numerous other cases of which we content ourselves with citing the following. (*Grow* v. *His Creditors*, 31 Cal. 330; *Sanborn* v. *His Creditors*, 37 Cal. 609; *Lambert* v. *Slade*, 4 Cal. 337.)

*Thos. V. O'Brien*, for Respondent.

I respectfully submit that, having elected himself and qualified as assignee, appellant waived the right as a creditor to object to his own appointment as assignee.

That having undertaken the trust for all the creditors, he waived the right to object as a creditor to the surrender of the assets of the insolvent to himself, for the benefit of all the creditors.

So long as he continued to act as trustee, he could not seek to destroy their trust.

He would not be permitted to commit *felo de se.* He would not be permitted to perpetrate a fraud on his beneficiaries by playing, in his capacity of trustee, into his own hands as attaching creditor. (*Sanborn* v. *His Creditors*, 37 Cal. 609; *Cohen* v. *Barrett*, 5 Cal. 195; *Hastings* v. *Cunningham*, 39 Cal. 144; Story Eq. Jur. § 322; Civil Code, §§ 2228–2234, 2283, 2306; *Fox etc.* v. *Minor*, 32 Cal. 112; *Page* v. *Naglee*, 6 Cal. 241; *Hawley* v. *Mancius*, 7 Johns. Ch. 275; 2 Paige, 603; Bishop on Insolvent Debtors, p. 273, § 293, and p. 127, § 148; Bump on Bankruptcy, 458; *Strong* v. *Willis*, 3 Fla. 124; Perry on Trusts, 3d ed. vol. 1, p. 540.)

McKEE, J. — This was a proceeding by Hinkel, the respondent, to be adjudged an insolvent debtor, and discharged from his debts. The proceeding was commenced under the provisions of the Statute of Insolvency passed March 4, 1852. In the schedule filed by the petitioner, Moody, the appellant herein, was named as a creditor to whom the insolvent owed a balance of four thousand dollars upon a promissory note. At a meeting of the creditors of the insolvent on the day fixed by the court for the appointment of an assignee, pursuant to notice given for that purpose, Moody was elected assignee. As such he qualified and entered upon the duties of his office. But as a creditor of the estate he also demurred to the petition of the insolvent, and at the same time filed a written opposition to his discharge upon the grounds that he had committed fraud in wilfully and knowingly omitting from the schedule of his property several parcels of real estate, of which he was really the owner, but for which, before filing his petition in insolvency, he had executed and delivered to his father sham deeds with intent to defraud his creditors.

The court overruled the demurrer, and on motion of the attorney for the insolvent struck from the files the written opposition accusing the insolvent of fraud.

The statute under which the proceeding was had provided for the filing of such an opposition by a schedule creditor of the insolvent, and prescribed the duty of the court with reference to it.

Section 20 provided as follows: "That in case after the appointment of said assignees, any one or more of the creditors of the insolvent debtor should deem it necessary to oppose it, on the ground of some fraud having been committed by the said insolvent debtor, or of the appointment not having been legally made, he shall within ten days next following the appointment of said assignees, lay before the court which has already taken cognizance of the case, his written opposition, stating specially the several facts of nullity of the said appointment, or of fraud by him alleged against the insolvent debtor, whereupon, in case of accusation of fraud, after having received the said insolvent debtor's answer, the court shall order a jury to be summoned of not less than six men, to be summoned in the same manner as

juries are summoned in the District Court for the purpose of deciding on the same accusation."

Filed, as the opposition was, within the time prescribed by that section, and by the appellant as a creditor, who had proved and filed his claim according to law, the opposition was a part of the proceeding authorized by the insolvent law; and upon being filed it raised an issue which involved a question of fraud which it was the duty of the insolvent to meet, and the court to hear and determine. This issue the insolvent had the right to meet, either by demurrer or answer to the opposition containing the allegations of fraud. (*Wilson* v. *His Creditors*, 32 Cal. 407.) On failure or refusal to demur or answer, the court, as in ordinary cases, could order a dismissal of the proceeding for failure to prosecute. (*Sanborn* v. *His Creditors*, 37 Cal. 609.) On filing an answer the duty was imposed on the court to try and determine the issue as prescribed by sections 20, 21, and 22 of the insolvent law; but until the issue was disposed of on demurrer or answer, it was erroneous to discharge the insolvent.

The fact that the opposition was filed by a creditor who had been elected assignee did not prejudice his right to make it — did not affect its validity nor oust the jurisdiction of the court to hear and decide the issue raised by it. As assignee, he was entitled to all the property of the insolvent from and after the surrender, even if it was not mentioned in the schedule (*Poehlmann* v. *Kennedy*, 48 Cal. 201), and when obtained he would hold it in trust for the benfit of all the creditors and of the insolvent himself, subject to the proceeding in which he was acting as assignee. By that relation to the estate he did not waive nor lose any of his rights as a creditor. In his capacity as creditor, he had the right to attack the proceeding in insolvency as a fraud upon the creditors. The Insolvent Statute of 1852 was not intended for the benefit of fraudulent insolvent debtors. (Stat. 1852, §§ 27, 28, 29.) Striking the opposition from the files was therefore erroneous. (*Davenport* v. *His Creditors*, 62 Cal. 29.)

Judgment and order reversed, and cause remanded for further proceedings.

Ross, J., and McKINSTRY, J., concurred.